**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 16, 2020

# In the Court of Appeals of Georgia

A20A0189. THE STATE v. GILMORE.

MERCIER, Judge.

David Lee Gilmore was charged with sale of methamphetamine, possession of methamphetamine, and possession with intent to distribute methamphetamine. Prior to trial, the State filed motions to admit a video recording obtained by a confidential informant during a controlled drug buy involving Gilmore. The State asserted that the video recording was admissible pursuant to OCGA § 24-9-923 (b) because the confidential informant (i.e., the witness authenticating the evidence) was now deceased; and the recording was admissible pursuant to OCGA § 24-8-807 "under the residual hearsay exception" given the statement's "circumstantial guarantees of trustworthiness." The trial court denied the motions, holding that the statements on the recording (both verbal and nonverbal), were testimonial and that Gilmore never

had an opportunity to cross-examine the confidential informant regarding those statements, such that admitting the recording would violate the Confrontation Clause of the United States Constitution. The State appeals.[1] Finding no error, we affirm.

We review a trial court's decision on the admission of evidence for an abuse of discretion. *Jenkins v. State*, 303 Ga. 314, 316 (2) (812 SE2d 238) (2018).

The alleged facts and procedural history relevant to this appeal are as follows. Law enforcement officers with a drug task force suspected Gilmore of selling drugs and used a confidential informant to conduct a controlled buy of drugs from Gilmore. In July 2018, agents gave the confidential informant a $20 bill, attached a video camera to his key ring, and sent him to Gilmore's home to purchase drugs. The agents followed the confidential informant to the house, but they did not witness the encounter. Afterwards, the confidential informant returned to the agreed-upon location, gave an agent a small bag of suspected methamphetamine, returned the video recording device to the agent, and left. Gilmore was later indicted on drug charges in connection with the controlled buy to the confidential informant.

---

[1] See OCGA § 5-7-1 (a) (5) (permitting a direct appeal by the State from an order excluding evidence in a criminal case).

2

In April 2019, prior to Gilmore's trial, the confidential informant committed suicide while in jail. The State then filed motions to admit the video recording at trial, asserting that the confidential informant's statements in the video are admissible under OCGA § 24-9-923 because the authenticating witness is unavailable, and under OCGA § 24-8-807 because the statements have guarantees of trustworthiness. Gilmore countered that admitting the recorded statements and movements of an unavailable confidential informant made during a controlled drug sale as part of a law enforcement drug investigation would violate the Confrontation Clause of the United States Constitution.

The State tendered the video recording at the hearing. It is undisputed that the video recording shows Gilmore handing the confidential informant a bag containing suspected methamphetamine and Gilmore thereafter holding a $20 bill, and that, while the recording includes audio, the quality is poor and any verbal statements made during the alleged transaction are indiscernable; in fact, the trial court stated that it "could not make out what they were saying on the video," as "it was mumbled." A police officer testified as to the reliability of the video recording.

The trial court found that the confidential informant's movements during the drug transaction constituted nonverbal testimonial statements, and that they were subject to exclusion under the Confrontation Clause. We agree.

1. "The Sixth Amendment's Confrontation Clause provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' This fundamental right is a bedrock procedural guarantee [that] applies to both federal and state prosecutions[.]" *Freeman v. State*, 329 Ga. App. 429, 433 (2) (765 SE2d 631) (2014) (citations and punctuation omitted).

> [T]he Supreme Court of the United States clarified the . . . meaning and scope of the right to confrontation of one's accusers in *Crawford v. Washington* [541 U. S. 36 (124 SCt. 1354, 158 LE2d 177) (2004)], holding that when the admission of testimonial evidence is at issue the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. But when the statement at issue is nontestimonial in nature, the State's normal rules regarding the admission of hearsay apply.

*Freeman*, supra (citations and punctuation omitted); see also *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006). The Confrontation Clause does not "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U. S. at 59, n. 9. "[A]dmitting evidence in violation of a

4

defendant's Confrontation Clause rights 'is one of constitutional magnitude[.]'"
*Freeman*, supra at 437 (2).

It is undisputed that the witness in this case, the confidential informant, is unavailable and that Gilmore did not have a prior opportunity to cross-examine him. Thus, if the evidence at issue constitutes testimonial statements offered for the truth of the matter asserted, the Confrontation Clause bars its admission.

(a) *Does the confidential informant's nonverbal conduct depicted in the video recording constitute a statement*?

While Georgia's courts have not specifically determined whether nonverbal conduct is a statement within the Confrontation Clause, Rule 801 (a) of the Federal Rules of Evidence defines a "statement" as including assertive, nonverbal conduct.[2] See *United States v. Lamons*, 532 F.3d 1251, 1263 (II) (A) (11th Cir. 2008); *United States v. Lopez-Moreno*, 420 F.3d 420, 436 (c) (5th Cir. 2005). Likewise, tracking the federal rule, a "statement" under Georgia's hearsay statutes encompasses a person's nonverbal conduct if it is intended by the person to be an assertion. OCGA § 24-8-801 (a) (2). For example, nodding one's head in response to a question has been

---

[2] "[W]here the new Georgia [evidence] rules mirror their federal counterparts, . . . Georgia courts look to the federal rules and how federal appellate courts have interpreted those rules for guidance." *Jenkins*, supra at 317 (2).

deemed a nonverbal assertion, *Wiggins v. State*, 295 Ga. 684, 685-686 (1) (763 SE2d 484) (2014), as has pointing out a person in a police lineup. See *State v. Orr*, 305 Ga. 729, 741 (4) (a) (827 SE2d 892) (2019). A co-conspirator's act of pointing out a drug dealer's house has been deemed assertive, nonverbal conduct. See *United States v. Caro*, 569 F.2d 411, 416 n. 9 (5th Cir. 1978). And a video recording of a doctor performing a medical procedure has been found to constitute assertive nonverbal conduct, where the recording of his movements was made in response to a law enforcement request. See *United States v. Martinez*, 588 F.3d 301, 310-311 (II) (A) (1) (6th Cir. 2009). In those cases, the movements were subject to the rule against hearsay.

In this case, the video recording of the confidential informant's movements during the controlled drug buy was made at the request of and with equipment supplied by law enforcement agents as part of their investigation of Gilmore. At the hearing, an agent agreed that the video recording showed Gilmore handing a plastic bag (containing suspected methamphetamine) to the confidential informant. It is undisputed that the recording then shows Gilmore taking or holding the $20 bill. It is clear that the confidential informant intended to show that Gilmore was selling

6

methamphetamine to him, and that the statement was offered for the truth of the matter asserted. The confidential informant's movements were thus a statement.

The State's reliance on *United States v. Taylor*, 688 Fed. Appx. 638 (11th Cir. 2017) (unpublished), as supporting its argument is misplaced. In that case, the Eleventh Circuit Court held that the trial court did not abuse its discretion by admitting a video recording of a drug transaction because, given the record before the Court, it was not clear that the video footage contained testimonial statements and, the Court added, even assuming the footage did contain testimonial statements, the evidence was not offered for its truth. Id. at 642-643. The *Taylor* Court reiterated that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Id. at 643.

(b) *Is the video recording testimonial*?

A statement can be characterized as testimonial where it "is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Freeman*, supra at 434 (2) (citation and punctuation omitted). "Accordingly, the Confrontation Clause prohibits the introduction of a formal statement to a government officer made in an effort to establish an evidentiary case, such as that which occurs during a police investigation." Id. (citation and punctuation omitted).

7

"[T]he Supreme Court in *Crawford* found that a statement might also be considered testimonial if it was made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Freeman*, supra at 434 (citation and punctuation omitted).

As this Court has stated, "a confidential informant's statements to a law enforcement officer are clearly testimonial because tips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial." *Freeman*, supra at 435 (2) (citations and punctuation omitted). Further,

> the very fact that the informant is confidential – i.e., that his or her identity is not disclosed – heightens the dangers involved in allowing a declarant to bear testimony without confrontation. Indeed, permitting anonymous accusations of crime without any opportunity for cross-examination would make a mockery of the Confrontation Clause.

Id. (citations and punctuation omitted).

In this case, law enforcement officers equipped the confidential informant with a video camera and instructions to purchase drugs from Gilmore. Gilmore was later arrested for selling drugs to the confidential informant. The confidential informant's movements were testimonial because they were knowingly and purposefully made to

8

authorities and accused Gilmore of selling methamphetamine. See *Freeman*, supra. And the drug-sale video recording was created under circumstances which would lead an objective witness to reasonably believe that the confidential informant's statements and acts were going to be used against Gilmore at trial. See id. Notably, this is not a situation akin to the admissibility of store surveillance video footage – in which a video camera is continuously recording and coincidentally captures a crime occurring. The recording in this case was specifically designed by law enforcement officers in connection with their investigation of Gilmore for drug offenses, made to accuse him of such crimes and to be used against him at trial.

We point out that there was obviously a verbal conversation between Gilmore and the confidential informant during the encounter but, as the trial court specifically found, what the men were saying cannot be discerned from the recording. Gilmore was thus denied the opportunity to question the confidential informant regarding what was being said (or not being said) in the recording.

Accordingly, the trial court did not err by finding that the confidential informant's conduct constituted testimonial statements that are subject to and barred by the Confrontation Clause.

9

2. Nonetheless, the State contends that the video recording is admissible under OCGA § 24-9-923 because a law enforcement officer is available to authenticate the recording and establish its trustworthiness.

Indeed, OCGA § 24-9-923 (b) permits the admission of video evidence where the authenticating witness is unavailable and where the court determines, based on competent evidence, that the recording tends to show reliably the facts for which it is offered. However, on its face, OCGA § 24-9-923 acknowledges that it supplements rather than supercedes other laws governing the admission of evidence. See OCGA § 24-9-923 (d). As *Crawford* provides, when *testimonial* statements are at issue, the Sixth Amendment requires that the witness is unavailable and that the defendant had a prior opportunity for cross-examination. *Freeman*, supra at 433 (2). It is when a statement is *nontestimonial* that the State's normal rules regarding hearsay apply. See *Crawford*, 541 U. S. at 68; *Freeman*, supra at 433-434 (2).

3. On appeal, the State also argues that the video recording is admissible under OCGA § 24-9-901 (b) (1). However, the State did not make this argument in its motions below. Nor has it enumerated this issue as error. Therefore, this issue is not properly before us. See *Jones v. State*, 332 Ga. App. 506, n. 2 (773 SE2d 463) (2015) (an enumeration of error cannot be enlarged by argument in brief to include issues not

10

made in the enumeration); *State v. Johnson*, _ Ga. App. _ , n. 6 (1) (b) (841 SE2d 91) (2020) (argument not well-developed below nor enumerated as error on appeal will not be considered).

*Judgment affirmed. Miller, P. J., and Coomer, J., concur*.